IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ZENDEL ROLACK,

    Defendant.

REPORT AND
RECOMMENDATION

22-cr-32-wmc-2

---

## REPORT

The grand jury has charged defendant Zendel Rolack with possession of firearms by a convicted felon. Dkt. 3. Most of the government's evidence against Rolack was obtained during execution of a state court search warrant issued for an apartment in Oregon, Wisconsin, and includes three firearms and a cell phone.[1] Rolack has moved to suppress the evidence derived from the officers' subsequent extraction of the contents of his cell phone, claiming that this exceeded the scope of the search warrant. Dkt. 40. In other words, Rolack is not challenging the sufficiency of the search warrant, he is challenging how the police executed it. Rolack contends the officers exceeded the express parameters of the warrant by seizing his cell phone and accessing its data. *See* Reply, dkt. 70, at 3. The government responds that the challenged extraction was within the scope of the warrant, and that the Good Faith Doctrine militates against suppression even if the officers went too far. Dkt. 68. In reply, Rolack concedes nothing. Dkt. 70.

For the reasons stated below, I am recommending that the court deny the motion to suppress.

---

[1] The police actually seized two cell phones belonging to Rolack, but only one of them–the iPhone 8– is relevant to the suppression motion.

The evidence relevant to Rolack's suppression motion consists of the search warrant affidavit ("complaint") and the search warrant, along with the lead detective's testimony and the exhibits offered at this court's November 1, 2022 evidentiary hearing. Having considered all of this evidence, I find the following facts:

**Facts**

In the early morning of September 29, 2021, shots were fired in the parking lot of 2301 Post Road, Fitchburg, Wisconsin, an apartment complex just west of Fish Hatchery Road. As part of the investigation by the Fitchburg Police Department, on October 5, 2021, FPD Detective Jordan Trundle applied to the Dane County Circuit Court for a search warrant for 213 North Alpine Park Way in Oregon, Wisconsin.

The complaint, dkt. 41-2, speaks for itself. By way of synopsis, Det. Trundle reported that on the night of the shooting, FPD officers went to 2301 Post Road to talk to Mystasia Smith, who had reported that her car tires had been slashed. Investigation that night revealed not only slashed tires, but gunfire: the police discovered scattered bullet holes and recovered spent cartridge casings, and witnesses reported hearing about gunshots around 1:40 a.m. Smith told the police that she believed her ex-boyfriend, Alexander Jefferson-Cooper, was responsible. FPD's investigation corroborated Smith's account.

Follow-up investigation revealed that Jefferson-Cooper lived at 213 North Alpine Park Way in Oregon. Additional investigation uncovered photographs that Jefferson-Cooper–who is a convicted felon–had posted on his Facebook page on September 9, 2021 showing himself posing with firearms.

In his search warrant complaint, Det. Trundle reported that:

> Your complainant has collected cellular phones or electronic communication devices in past investigations. Your complainant knows from my training and experience that individuals with cell phones/electronic communication devices send and receive phone calls, send and receive text messages, take photos and make videos with cell phones and electronic communication devices. Your complainant knows the owner of the cell phone may have sent communication to parties discussing the shooting or argument between Mystaisai/Davonte and Alexander. Your complainant knows from my training and experience electronic communication devices and cell phone have GPS on cell phones and Communication devices and can place the phone in the exact area of the investigation or area of a crime.
>
> Your complainant believes information contained in Alexander Jefferson-Cooper's cell phone could provide information showing communication about the shooting on September 29th, 2021 including communications leading up to and after September 29, 2021. Your complainant knows from previous homicide investigations, and weapons violations subjects keep information and store the information on their phone which include video's, photos, text messages or other messages related to weapons, guns and discussion about those activities. Your complainant knows from previous weapons investigations I have found many suspects to document the weapons they have used. Your complainant believes the contents in these cellular phones or electronic device will provide further evidence Alexander Jefferson-Cooper was in possession of guns or ammunition, or had communication before or after the shooting on September 29, 2021 and may provide further evidence into this investigation.
>
> Your complainant is requesting the ability to search cellular phones or electronic communication devices from August 29, 2021 until the date the warrant is executed. Your complainant knows from this investigation Mystaisai and Alexander Jefferson-Cooper had "dated" in the summer of 2021. Your complainant believes communication between Mystaisai and Alexander Jefferson-Cooper and Alexander Jefferson-Cooper and Davonte could have occurred

> leading up to September 29th, 2021. Your complainant believes 30 days prior to September 29th, 2021 would be sufficient for this investigation that texts, phone calls, photos, videos and social media saved on the communication devices could aid in this ongoing investigation.
>
> Dkt. 41-2, at 5-6 (all *sic*).

The court issued the requested warrant. Among other things, the warrant authorized:

> The seizure of any cellular phone and any memory or data contained therein. Data from the seized electronic communication devices may be searched for data associated to the incidents outlined in the complaint and for communications associated to a shooting at 2301 Post Road in the City of Fitchburg on September 29, 2021. Your complainant is requesting a search of cellular phones, electronic communication devices and any memory or data contained from August 29, 2021 until the cellular phone is seized or warrant is executed.
>
> Dkt. 41-1 at 2.

Officers executed the warrant that same afternoon. A tactical team removed Denise Jackson, Alexander Jefferson-Cooper and Zendel Rolack from the multistory residence. At that time, the police had no evidence connecting Rolack to the Post Road shooting. Jackson and Jefferson-Cooper had cell phones on their persons which officers seized pursuant to the warrant.

In the basement, officers searched a room that, in addition to a washer and dryer, contained a bed, men's clothing, an iPhone 11, two safes containing five firearms, and Rolack's driver's license, which led the police to conclude that this was Rolack's bedroom. (*See* photo, dkt.

54-4).² In the kitchen, officers found a revolver hidden above a cupboard. Officers seized all the firearms and seized the iPhone 11.³

In a second-floor children's bedroom, officers found an iPhone 8 hidden under children's clothing on a shelf in a walk-in closet. (*See* photos, dkts. 54-1 through -3). The police did not know to whom this phone belonged. Officers seized this iPhone 8 pursuant to their warrant, but they did not search it at that time. Pursuant to FPD practice, the phone was taken to FPD's evidence facility where it was plugged into a cell phone locker to keep it charged. Det. Trundle contacted Wisconsin Department of Justice's Division of Criminal Investigation (DCI) to ask for a partial data extraction from the iPhone 8, limited to the parameters set in the search warrant. The extraction was done using Cellebrite software. DCI sent the results of its extraction to Det. Trundle in December 2021, and he began his review of the extracted information.

By this time, the police had developed ballistic evidence establishing that the firearm used in the Post Road shooting was a firearm taken from one of the safes in Rolack's basement bedroom. This led Det. Trundle to believe that Rolack could have been involved in the shooting by having supplied Jefferson-Cooper with the firearm used. In turn, this led Det. Trundle to conclude that any phone of Rolack's that police seized could be searched pursuant to their warrant.⁴ As part of his ongoing investigation, the day after the shooting, October 6, 2021, Det. Trundle had sought and obtained a warrant for a DNA sample from Rolack, which would have

---

² Subsequent jail calls by Rolack (which Det. Trundle reviewed) corroborated this.

³ The iPhone 11 no longer is relevant to Rolack's suppression motion because the government has abjured any use of this phone at trial on the ground that it contains nothing of evidentiary value.

⁴ Det. Trundle acknowledges that there was no evidence that Rolack was *directly* involved in the actual shooting, and that the State did not bring any charges against Rolack arising out of the shooting.

tied him even more tightly to the firearm used in the shooting. *See* dkt. 41-3.[5] Det. Trundle, however, did not seek a new warrant to search the contents of the iPhone 8 because he believed that the first search warrant authorized his search of every phone found in the residence.

In December 2021, when Det. Trundle began his review of the Cellebrite extraction from the iPhone 8, he still did not know to whom the phone belonged. In Det. Trundle's training and experience, he is aware that two or more people will not only share the same cell phone and pass the phone around, but they also will share cloud accounts so that they can get into each other's accounts and put different things on the shared phones. Sometimes the "initial screen" of a Cellebrite extraction will identify the phone's owner; in this case, it did not. The extraction captured no text messages for Det. Trundle to examine, so he began looking at extracted photos. Although the extraction had been limited to information put into the phone after August 29, 2021 (the date limit contained in the search warrant), this filter nonetheless would leave in place photographs that had been taken on an earlier date but had been added to the phone or had been edited or manipulated in some manner after August 29, 2021. Det. Trundle found both photographs and videos on the phone showing Rolack posing with firearms. This led Det. Trundle to believe that the phone belonged to Rolack. This was the first time Det. Trundle had encountered any evidence connecting Rolack with this particular phone.[6]

---

[5] There is no testimony that Rolack's DNA was found on this particular firearm, but the government proffered in response to a court question that his DNA was found on some of the firearms. Dkt. 57 at 4.

[6] The record should be clear that Det. Trundle believed that the October 5, 2021 search warrant authorized him to seize and to search any cell phone that he found in the residence, regardless of who owned the phone. Det. Trundle became all the more convinced of the relevance of any phone associated with Rolack based on the subsequently-discovered evidence of Rolack's connection to the firearm used in the shooting. *See* Tr., dkt. 57, at 18-22.

## Analysis

Rolack concedes that, given the location in which the police found the iPhone 8,[7] the police had the right to seize it when searching the residence. He contends, however, that once the police became aware that this phone belonged to him, they had no right to search its contents without first obtaining a new warrant that permitted this. *See* Br. in Supp., dkt. 63 at 4. Searching his phone without a new warrant was "in direct violation of the constraints clearly outlined in the October 25, 2021 search warrant." Br. in Sup,, dkt. 63, at 5. Rolack contends that the warrant's scope was unambiguous because it described with particularity the items that could be seized and searched; "those items do not include Mr. Rolack's I-phone 8."

The government responds that this cell phone was within the scope of the search authorized by the warrant, and that even if it wasn't, Det. Trundle seized it and searched its contents in a good faith belief that this phone *did* fall within the scope of the warrant. The government is correct.

Rolack contends that the scope of the warrant is too narrow to encompass any phone that belonged to him. After all, the implication of Det. Trundle's warrant application is that he believed that relevant evidence likely would be found in cell phones and other electronic communication devices associated with Jefferson-Cooper. The only other name that Det. Trundle mentions is the alleged victim (Mystasia Smith), and he does this to explain why he is asking for an August 29, 2021 start date for the data search. So far, so good for Rolack. But Det. Trundle's actual request to the court was for a warrant "to search cell phones or electronic communication devices" that are located on the premises. He did not limit this request in any

---

[7] Hereafter I will refer to the iPhone 8 as the cell phone or the phone. References to the iPhone 11 will specify it as such.

fashion. And that's what the court authorized: "The seizure of *any* cellular phone and any memory or data contained therein." Dkt. 41-1 at 2, emphasis added.

One might ask whether Det. Trundle's apparently narrow complaint justified the broad warrant that he requested and received. It's a fair question in light of Det. Trundle's clumsy explanation of what he was looking for. But under the circumstances, Det. Trundle's broad request makes sense, and his fact presentation adequately supports the warrant that the court issued. "[S]pecificity is a relative matter. A warrant may be thought 'too general' only if some more-specific alternative would have done better at protecting privacy while still permitting legitimate investigation." *United States v. Bishop*, 910 F.3d 335, 337 (7th Cir. 2018), *citing United States v. Vitek Supply Corp.*, 144 F.3d 476, 482 (7th Cir. 1998) and *United States v. Bentley,* 825 F.2d 1104, 110 (7th Cir. 1987). In *Vitek Supply Corp.*, the defendants moved to quash the search warrant, arguing that it did not distinguish between legal and illegal substances. The court denied the motion, holding that a warrant must explicate the items to be seized only as precisely as permitted by the circumstances and the nature of the alleged crime. In that case, the court was "unaware of any readily-discernable characteristic that would have enabled the agents to identify the illegal substances" (namely, misbranded drugs and adulterated animal feed). 144 F.3d at 481. To the same effect, in *Andersen v. Maryland*, 427 U.S. 463 (1976), the Court rejected defendant's claim that the challenged search warrants were too broad, holding that their facial breadth was clearly limited by context and by implication. *Id.* at 481-82.

In this case, both Det. Trundle's probable cause showing and the warrant actually issued by the court allowed the police to seize any cell phone in the residence that could have data or communications associated with the Post Road shooting for which Jefferson-Cooper was under

8

investigation. As in *Vitek Supply Corp., supra*, there would have been no readily discernible characteristics on any cell phones, iPads, tablets or other devices found at Jefferson-Cooper's residence that would have enabled the police to identify which of them contained this information, and which did not. *Cf. Bishop*, 910 F.3d at 336 ("criminals don't advertise where they keep evidence.")

Rolack essentially concedes this point by not challenging the initial seizure of the cell phone from its hiding place in the children's bedroom. (To the same effect, if Rolack's iPhone 11 still was in the suppression mix, then I would conclude that the police were justified in seizing it as well: although the phone was found in the room with Rolack's stuff, that didn't necessarily make it Rolack's phone. As far as the police knew, it could have been Jefferson-Cooper's phone and he had lent it to Rolack to copy a play list, or he had simply left it in Rolack's room by accident.)

Rolack is left to argue that "upon realizing that the I-phone 8 belonged to Mr. Rolack, steps should have been taken to apply for a search warrant to authorize the expanded search and seizure." Br. in Sup., dkt. 63 at 5; *see also* Br. in Reply, dkt. 70 at 2 ("As soon at Det. Trundle realized that the iPhone 8 belonged to Mr. Rolack . . . he should have stopped the search of said phone."). But as the government points out, Det. Trundle did not know to whom the phone belonged when he began reviewing the Cellebrite extraction in December of 2021. Even then, there was no "initial screen" identifying the phone's owner, and there were no text messages on the phone that could have indicated its owner. It was the very photographs and videos that Rolack seeks to suppress that first alerted Det. Trundle that this might be Rolack's phone.[8]

---

[8] Rolack does not claim that he ever actually asserted ownership of this phone–or the iPhone 11–prior to the police searching them.

9

At that point, the plain view doctrine kicked in. Police may seize evidence not described in their search warrant if: (1) the officer has a legal right to be in the place from where he sees the object subject to seizure; (2) the officer has a lawful right of access to the object itself; and (3) the property's incriminating nature is immediately apparent, that is, the officer has probable cause to believe that the item is contraband or otherwise linked to criminal activity. *United States v. Johnson*, 47 F.4th, 535, 541 (7th Cir. 2022). As just noted, Det. Trundle had the right to dig into the Cellebrite extraction and to access the images therein, not only to determine who owned the phone, but also to look for evidence of the Post Road shooting (more on this below). Because Det. Trundle knew that Rolack was a convicted felon, the incriminating nature of any photograph or video of Rolack possessing a firearm would be immediately apparent to him.

In sum, there is no evidentiary support for Rolack's contention that Det. Trundle should have figured this out sooner and then obtained a new warrant before reviewing the Cellebrite extraction and discovering the images of Rolack with a firearm.

To be complete, let's assume, *arguendo*, that Det. Trundle's post-seizure investigation actually *had* given him reason to believe that the phone belonged to Rolack. This post-seizure investigation *also* tied Rolack to the Post Road shooting: the firearm that Jefferson-Cooper had used to shoot up Smith's car was found in a safe in Rolack's room (and also might have had Rolack's DNA on it; the court's record is unclear). As a result, the phone fit within the probable cause showing that Det. Trundle made in his search warrant complaint, and it fit within the scope of the warrant the court actually issued: to search any cellular phone for data associated to the Post Road shooting. For instance, Jefferson-Cooper could have texted or left a voice mail for Rolack asking to borrow the gun (if it was Rolack's) or to hide the gun (if it was Jefferson-

10

Cooper's), or otherwise could have communicated with Rolack about the planning, execution, or aftermath of the shooting. Further, there could have been photos or videos of Jefferson-Cooper, alone or with Rolack, posing with the firearm used at Post Road. All of this information was within the purview of the original warrant.

The bottom line is that Det. Trundle's search of Rolack's iPhone 8 was within the scope of the search warrant that he sought and obtained from the state court. True, both the complaint and the warrant itself (which I surmise the police drafted) could have been written more clearly, so that Rolack would not have to challenge–and this court would not have to parse–their scope. Even so, given the fact that the police genuinely could not discern the ownership of this cell phone until Det. Trundle actually reviewed the Cellebrite extraction, his search of this phone fell within the heartland of the warrant sought by the police and issued by the court. Put another way, Rolack's contention in support of suppression–that the police should have obtained a new warrant upon learning that it was his telephone–is based on an incorrect factual premise and on an overly-cabined gloss of the search warrant.

### The Good Faith Doctrine

As a fallback position, the government invokes the good faith doctrine announced in *United States v. Leon*, 468 U.S. 897 (1984). The government argues that "even if [Rolack] could show that the warrant excluded the search of the iPhone 8, or that the warrant lacked particularity, the good faith exception applies." Gov. Resp., dkt. 68, at 5. Rolack disputes the application of the good faith doctrine, pointing out that he is not challenging the sufficiency of

the warrant itself: he is asserting that the police exceeded the warrant's express parameters, an act to which the good faith doctrine does not apply. Br. in Reply, dkt. 70 at 3-4.

Rolack is correct that the good faith doctrine cannot salvage a search that exceeds the scope of the operative warrant. When that happens, the improperly-seized evidence is suppressed, regardless of the officers' good intentions. *See, e.g., United States v. Buckley*, 4 F.3d 552, 557-58 (1993) (another case involving the execution of a search warrant by the Fitchburg P.D. in which they were accused of exceeding the scope of their warrant). But Rolack is incorrect in contending that this is what happened here. As noted in the previous section, the search warrant was not limited in the fashion that Rolack posits. The warrant authorized the police to seize and search the contents of "any" phone found at the residence.

Rolack's best argument, then, is that Det. Trundle's complaint did not support a warrant this broad: the warrant should have been limited in the fashion that he advocates, and the court's failure to do so was error. Although I rejected this argument in the previous section, let's assume that I'm wrong, and that it *was* error for the court to issue such a broad search warrant. In that case, the good faith doctrine *would* apply.

As the court explained in *United States v. Matthews*, 12 F.4th 647 (7th Cir. 2021), despite the exclusionary rule, evidence obtained in violation of the Fourth Amendment is admissible if the officer who conducted the search reasonably relied on a warrant. The determination of reasonableness is an objective inquiry, and the officer's decision to obtain a warrant is prima facie evidence of good faith. At this point, the burden shifts to the defendant to rebut this presumption, and the burden is "heavy by design": it is "no small feat to overcome the presumption of good faith." *Id.* at 653, citations omitted.

There are four ways a defendant may overcome the presumption of good faith. Based on how Rolack has challenged the search of his phone, the third and fourth attacks are applicable here: Rolack must show either that Det. Trundle's complaint was so lacking in indicia of probable cause to search "any phone" at Jefferson-Cooper's residence, so as to render Det. Trundle's belief that he had probable cause entirely unreasonable; or, that the warrant was so facially deficient in particularizing its scope (by allowing the search of "any phone"), that the police could not reasonably presume that it was valid. *Id.*, citations omitted.

Rolack cannot show either of these things. As noted in the previous section, however unartfully Det. Trundle phrased his complaint, his intent was clear: he was requesting a warrant to search every phone and electronic device found at Jefferson-Cooper's residence for evidence of the Post Road shooting. His complaint also presented evidence to support this request. Even if this presentation did *not* reach the threshold of probable cause, it at least reached the threshold of providing *indicia* of probable cause, which suffices to establish Det. Trundle's good-faith reliance on the warrant issued by the court. *United States v. Matthews*, 12 F.4th at 656.

This being so, then it also was reasonable for Det. Trundle to presume the validity of the court's warrant that authorized him to search the contents of any phone on the premises. Further, it is clear from Det. Trundle's testimony and demeanor at this court's evidentiary hearing that a warrant this sweeping is exactly what he was seeking from the court, and that he harbored no doubts that he had probable cause to conduct such a search. *See* Tr., dkt. 57, at 18-21.[9]

---

[9] In the for-what-it's worth category, the government points out that Det. Trundle *did* go back to court to get a warrant for Rolack's DNA; it's fair to infer from this that his decision not to obtain a follow-up warrant for any of the phones seized was based on his genuine belief that he did not need one.

13

Perhaps more saliently, Det. Trundle did not know who owned the iPhone 8 until he actually began reviewing its contents. Tr., dkt. 57 at 13-14. As a result, it could not have been objectively unreasonable for him to review the Cellebrite extraction from the phone because until he did so, he did not know–and could not rule out–whether it fit within the limits that Rolack would have this court impose on the scope of the warrant.

In sum, if the court were to conclude that it was improper for the state court to issue a warrant to search the contents of any phone found on the premises, then the good faith doctrine salvages Det. Trundle's search of the iPhone 8 from suppression.

## RECOMMENDATION

Pursuant to 42 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court deny defendant Zendel Rolack's motion to suppress the evidence obtained from the iPhone 8 seized pursuant to the search warrant.

Entered this 26th day of January, 2023.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Madison, Wisconsin 53703

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

January 26, 2023

Taylor Kraus
Assistant United States Attorney
222 West Washington Avenue, Ste. 700
Madison, WI 53703

Kim Zion
Eisenberg Law Offices, S.C.
308 East Washington Avenue
P.O. Box 1069
Madison, WI 53701-1069

    Re:    United States v. Zendel Rolack
            Case No. 22-cr-32-wmc-02

Dear Counsel:

    The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

    The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

    In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before February 9, 2023 by filing a memorandum with the court with a copy to opposing counsel.

    If no memorandum is received by February 9, 2023, the court will proceed to consider the magistrate judge's Report and Recommendation.

                            Sincerely,

                            /s/

                            Connie A. Korth
                            Secretary to Magistrate Judge Crocker

Enclosures

15

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:
        (1) injunctive relief;
        (2) judgment on the pleadings;
        (3) summary judgment;
        (4) to dismiss or quash an indictment or information;
        (5) to suppress evidence in a criminal case;
        (6) to dismiss or to permit maintenance of a class action;
        (7) to dismiss for failure to state a claim upon which relief can be granted;
        (8) to dismiss actions involuntarily; and
        (9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth with particularity the bases for these objections. An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection. Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects. The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection. The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions. The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.** *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).